IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JANE DOE, JANE DOE II** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**SHADY GROVE REPRODUCTIVE SCIENCE CENTER, P.C.,**<br><br>Defendant. | Case No. 8:24-cv-02368-ABA<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Pursuant to Fed. R. Civ. P. 12(b), Defendant Shady Grove Reproductive Science Center, P.C. ("Defendant" or "SG") respectfully moves the Court to dismiss all causes of action alleged in the Class Action Complaint [Dkt. 1] filed by Plaintiffs Jane Doe and Jane Doe II (collectively, "Plaintiffs"). In support, SG states the following.

**I.
INTRODUCTION**

This action is one of hundreds—if not thousands—of website tracker lawsuits on the rise in recent years in which no party is harmed and legal fees abound. Plaintiffs brought this action based on allegations that SG purportedly employs tracking technology—notably, the Meta Pixel, Google Analytics, and Microsoft's UET Tag ("Analytics Services")—on its public-facing website, https://www.shadygrovefertility.com/ ("Website"). Based on generalizations regarding the functionality and default configurations for the Analytics Services, Plaintiffs contend that SG collected data relating to their interactions with the Website and by implementing the Analytics Services' technology on it, SG is unlawfully disclosing regulated personally identifiable information ("PII") and protected health information ("PHI") to unauthorized third parties.

Plaintiffs' Complaint is based on generalizations and conclusory allegations. It lacks factual

11930166v1

allegations regarding how the Analytics Services' technology behaved when it was purportedly running on SG's website. In addition, while conveniently citing to SG's Notice of Privacy Practices to establish their claims, Plaintiffs fail to note that the same notice discloses the Website's data collection practices, including the use of Business Associates such as software providers. Plaintiffs' Class Action Complaint lacks well-pleaded facts as to the nature or content of communications they allege SG unlawfully disclosed to the Analytics Services. And Plaintiffs do not (nor can they) allege any recognizable damages or injury necessary for recovery under the alleged theories of liability.

In short, Plaintiffs' Complaint seeks a windfall while failing to acknowledge SG's "Notice of Privacy Practices" and failing to articulate any injury or damages. Accordingly, the Court should grant SG's Motion to Dismiss, dismiss Plaintiffs' Complaint, and dismiss every cause of action alleged against SG by Plaintiffs with prejudice.

## II.
## BACKGROUND

### A. Procedural Background.

Plaintiffs filed their Complaint on August 14, 2024, alleging causes of action for invasion of privacy (intrusion upon seclusion), unjust enrichment, violations of the Maryland Consumer Protection Act, and violations of the Maryland Wiretapping and Electronic Surveillance Act. (Complaint at 19-27 ¶¶ 93-140.)  SG received service of the Summons and Complaint on August 30, 2024.  (Dkt. 16.)  The Parties then reached an agreement to briefly extend the deadline for SG's initial response on two occasions.  (Dkt. 17, 21.)  SG now timely files this Motion to Dismiss.  *See* Dkt. 22.

### B. Factual Background.

Plaintiffs' Complaint provides generalizations about the Analytics Services' services, including the Meta Pixel, Google Analytics, and Microsoft's Universal Event Tracking ("UET")

tag—the technology at issue in this action. (Complaint ¶¶ 40-63.) Once implemented, Plaintiffs allege that the Analytics Services processed data from visitors to the Website to "create reports that analyze the data[,]" including reports on Website traffic, engagement, and "demographics." (*Id.* ¶ 52). Without providing any allegations regarding the nature and configuration of their technology on the Website, Plaintiffs allege that the Analytics Services technology is implemented "by adding a small piece of JavaScript measurement code to each page." (*Id.* ¶ 51). This code, according to the Complaint "immediately intercepts a user's interaction with the webpage every time the user visits it" and "collects identifiable information, such as the unique user and device identifiers . . . and IP address." (*Id.* ¶ 51).

Beyond providing services to SG, Plaintiffs allege that the Analytics Services "also use the data for their own purposes, such as improving their advertising capabilities and training machine learning models[,]" improving advertising networks, "creating wholesome profiles data points on individuals[,]" product improvement, and targeted advertising." (*Id.* ¶ 53). The Complaint then asserts—without providing further factual enhancement—that SG's incorporation of the Analytics Services' technology on its Website "disclosed users' communications on the SG Webpages to third parties" including the Analytics Providers. (*Id.* ¶ 54). Plaintiffs allege, for example, that SG's alleged use of Google Analytics on the Website's appointment scheduling page "disclosed to Google that [an] individual sought out an appointment with SGF and transmitted the information "alongside a Client ID . . . which is a unique identifier that Google uses to distinguish the specific individual from all other individuals." (*Id.* ¶ 55). Plaintiffs, however, do not allege what specific information Google Analytics captured by disclosing that an individual sought an appointment with SG. The Complaint contains similar allegations regarding Meta's technology. (*See Id.*)

While Plaintiffs allege that they "had no way of knowing that SG was disclosing their

private communications, including PHI, when they interacted with the SG Webpages[,]" Plaintiffs' allegation is belied by their reliance on SG's Notice of Privacy Practices—which is referenced by and forms an integral part of the Complaint. (*See, e.g.*, Complaint ¶ 9 (referencing SG's Notice of Privacy Practices for the proposition that Plaintiffs had a reasonable expectation of the privacy of their alleged communications on the Website); *Id.* ¶ 47 (describing various representations made by SGF by the Notice of Privacy Practices). *See also* https://www.shadygrovefertility.com/privacy/notice-privacy-practices (last accessed October 23, 2024). Beyond the passages described in the Complaint, SGF's Notice of Privacy Practices explains that:

> Business Associates. We may disclose your PHI to our business associates that assist us in our delivery of health care and related services. For example, we contract with a management services organization, US Fertility, which provides non-clinical, administrative and business support services on behalf of SGF, including without limitation, billing and collection services and technology and technology support services. **Other business associates may include software providers**, lawyers, accountants and other persons or entities **who provide us with items or services used in our business**. Before we disclose your PHI to a business associate, we will have a written contract with the business associate that will require the business associate to maintain the privacy of your PHI in accordance with HIPAA.[1]

*Id*. (emphasis added). Notwithstanding this clear notice by SG, the Complaint goes on to allege that SG disclosed PII/PHI to the Analytics Services but "did not state or disclose that it would disclose this information to third parties or that those third parties would be permitted to use the data for their own benefit." (Complaint ¶ 61).

In addition to the express notice of disclosure to Business Associates quoted above, SG's Notice of Privacy Practices states that "[u]nless otherwise permitted by applicable law, we will not

---

[1] Given their repeated reliance on SG's Notice of Privacy Practices to establish their reasonable expectation of privacy and other aspects of their claims, the Court can take judicial notice of the Notice of Privacy Practices. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (when reviewing a motion to dismiss, "a court may consider [] documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.").

use or disclose your PHI for purposes not described in this Notice unless you give us written authorization to do so[.]" Notice of Privacy Practices, https://www.shadygrovefertility.com/privacy/notice-privacy-practices (last accessed October 23, 2024). Such clear disclosures nullify Plaintiffs' allegation that "SG misled Plaintiffs and Class members to believe their private communications, including PHI, would not be disclosed to any third parties through their representations[.]" (Complaint ¶ 78).

## III.
## ARGUMENT AND AUTHORITIES

Plaintiffs fail to establish subject matter jurisdiction due to a lack of standing and fail to state a claim upon which relief can be granted under all four claims. As explained in more detail below, Plaintiffs suffered no harm or injury, were given notice and consented to SG's privacy practices, and rely on nothing more than conclusory allegations masquerading as "facts." Accordingly, the Court should dismiss Plaintiffs' claims in their entirety.

**A.  PLAINTIFFS HAVE NOT ESTABLISHED STANDING NECESSARY TO MAINTAIN SUBJECT MATTER JURISDICTION.**

The Court lacks subject matter jurisdiction because Plaintiffs have failed to articulate any harm suffered and therefore cannot establish standing. To establish "the irreducible constitutional minimum" of standing, Plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

   1. <u>Plaintiffs' Generalized Allegations Of Harm Are Insufficient To Demonstrate The Necessary Injury In Fact To Confer Standing.</u>

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548. Under Article III, "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) "Traditional tangible harms," such as

physical and monetary harms, qualify as "concrete" injuries. *Id*. at 425. Likewise, certain "intangible harms" can also be "concrete" if they have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. But courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*. An injury in fact must be concrete in "both a qualitative and temporal sense," and must be "distinct and palpable, as opposed to merely abstract." *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Ramirez*, 141 S. Ct. at 2204.

In *Ramirez*, the Supreme Court "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id*. This District is in accord. *See Asabre v. Retail Servs. & Sys., Inc.*, No. 22-cv-148-PWG, 2022 WL 4326536, at *2 (D. Md. Sept. 19, 2022) (quoting *Ramirez*); *Frazier v. Experian Info. Sols., Inc.*, No. 18-cv-0068-GLR, 2019 WL 13247929, at *3 (D. Md. July 25, 2019) (to determine whether a harm is sufficiently real or concrete, courts consider whether a statutory injury (1) "has a 'common law analogue' (a traditional right to sue)"; (2) "whether 'Congress sought to prevent' the harm alleged;" or (3) "whether the statutory violation caused a harm with a 'real world effect.'") (quoting *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346 (4th Cir. 2017)).

The supposed "injury" alleged by Plaintiffs is the exact type (one with "no concrete harm") which the Supreme Court deemed is insufficient to create standing. The Supreme Court concluded "no concrete harm, no standing" and accordingly, this Court should dismiss Plaintiffs' complaint in its entirety. *Ramirez*, 141 S. Ct. at 2214.

2. <u>Plaintiffs Do Not Allege A Concrete Harm Necessary To Demonstrate Standing.</u>

"When an issue of standing is asserted as a basis for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proof." *Trinity Outdoor, L.L.C. v. City of Rockville, MD*, 123 F. App'x 101, 105 (4th Cir. 2005). A challenge to standing may be facial or factual. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In a facial challenge to standing, courts apply the same standard as a motion to dismiss under Rule 12(b)(6), discussed below. *Id.*

Plaintiffs' claims arise from SG's engagement of the Analytics Services to process data of Website visitors to "create reports that analyze the data." Compl. ¶ 52. Plaintiffs allege—with bare assertions devoid of factual enhancement—that by implementing analytics on the Website, "SGF disclosed Plaintiffs' . . . private communications, as well as identifiable information, including unique user and device identifiers and IP Addresses" to the Analytics Services. (Complaint ¶ 51.) Of course, Plaintiffs' conclusory allegations shed no light on whether they have suffered a concrete, particularized harm.

Indeed, Plaintiffs fail to allege well pleaded facts showing they have personally been put at risk, suffered a privacy threat, or otherwise identify the harm suffered because of SG's conduct alleged in the Complaint. The Fourth Circuit has already rejected this sort of hypothetical risk as an "injury" and this Court should do the same. *Beck*, 848 F.3d at 274–75 (allegation that data breaches created an enhanced risk of future identity theft was too speculative to constitute an injury in fact). In fact, Plaintiffs do not even contend they have provided any information to SG that could lead to identity theft, fraud, or financial harm. *Antman v. Uber Techs., Inc.*, No. 3:15-CV-01175-LB, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) (plaintiffs lacked standing based on alleged data breach because data allegedly stolen— names and driver's license numbers—created "no obvious, credible risk of identity theft that risks real, immediate injury"). The Complaint does

not attempt to identify the nature of Plaintiffs' communications with SG beyond a general desire to receive fertility treatments—hardly surprising given the Complaint's allegation that, since its founding in 1991, Defendant has helped create more than 100,000 babies as of 2021. (Complaint ¶¶ 24, 44). Equally unsurprisingly, Plaintiffs fail to allege the communications or other sensitive information at issue which they allege SG unlawfully disclosed to the Analytics Services by use of their technology on the Website beyond the generalized, insufficient allegations in the Complaint. *See Id.* ¶ 122 (barebones allegation that Plaintiffs "were harmed and suffered ascertainable loss including, among other things, overpayment of SGF's services and/or improper taking of their valuable data" without alleging any further factual enhancement regarding this purported "ascertainable loss.")

Plaintiffs merely allege without any further showing that they:

- "[S]uffered harm and injury as a direct and proximate result of SGF's invasion of their privacy" *Id.* ¶ 99;

- "It would be inequitable under unjust enrichment principles for SGF to be permitted to retain any of the profit or other benefits they derived from the unfair and unconscionable methods, acts, and trade practices described in [the] Complaint" *Id.* ¶108;

- Plaintiffs . . . suffered and will continue to suffer injury in fact and/or actual damages" based on "SGF's unfair or deceptive acts or practices" while failing to provide any certainty to the damages or harm they seek to redress; *Id.* ¶ 123;

- Plaintiffs face a "continuing risk" based on SGF's "violations"; and

- "Plaintiffs . . . were damaged by SGF's conduct in that their privacy interest were harmed by the disclosure of their personally identifiable health information they

intended to remain confidential" and by SGF's "use of their valuable personally identifiable information without Plaintiffs'" consent. *Id.* at ¶ 140.

Plaintiffs' conclusory allegations of harm in the Complaint, such as SG's alleged use of their PHI/PII "are pled at too high a level of generality to allow the Court to determine whether [Plaintiffs have] carried [their] burden to establish standing." *Pruitt v. Resurgent Cap. Servs.*, LP, No. 21-cv-2615-JKB, 2022 WL 2530408, at *5 (D. Md. July 7, 2022) (finding no concrete injury where plaintiff alleged a debt collection letter caused confusion but did "not explain *how* the Letter did so" (italics in original)); *Stamat v. Grandizio Wilkins Little & Matthews, LLP*, No. 22-cv-00747-SAG, 2022 WL 3919685, at *7 (D. Md. Aug. 31, 2022) ("[plaintiff] alleges nothing more than similarly bare assertions of emotional harm" where plaintiff alleged "emotional distress and suffered lost time, annoyance, interference, and inconvenience . . . and has anxiety and increased concerns for the loss of his privacy, without alleging any facts to support these assertions." (internal quotations omitted)).

At most, Plaintiffs allege a bare procedural violation of the CPA, insufficient under *Ramirez* and *Spokeo* to establish standing.  Thus, dismissal is warranted.

**B.   THE COMPLAINT FAILS TO PLEAD A PLAUSIBLE CLAIM AGAINST DEFENDANT.**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 555). "[C]ourts

'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (*quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). Rather, the claim must be "plausible on its face," meaning that the plaintiff must plead sufficient factual allegations to "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 570). Because it fails to allege sufficient well-pleaded facts to support any of the causes of action asserted against SG, Plaintiffs' Complaint should be dismissed.

    1.    <u>Plaintiffs Fail To State A Claim For Intrusion Upon Seclusion.</u>

Plaintiffs' allegations regarding their voluntary disclosure of alleged PII/PHI to Defendant are missing well-pleaded facts regarding the supposed highly offensive nature of Defendant's alleged conduct and regarding any actual damages. Intrusion upon seclusion is a variation of Maryland's common law claim for invasion of privacy. *Whye v. Concentra Health Servs., Inc.*, No. 12-cv-3432-ELH, 2013 WL 5375167, at *14 (D. Md. Sept. 24, 2013), aff'd, 583 F. App'x 159 (4th Cir. 2014). "The elements of the tort are [1] an intentional intrusion [2] upon another person's solitude, seclusion, private affairs, or concerns [3] in a manner that would be highly offensive to a reasonable person." *Gamble v. Fradkin & Weber, P.A.*, 846 F. Supp. 2d 377, 383 (D. Md. 2012).

        (i)    *The Complaint lacks sufficient facts establishing Plaintiffs' reasonable expectation of privacy in the information that they voluntarily disclosed to SG or that use of the Analytics Services' technology would be highly offensive to a reasonable person.*

A claim for intrusion upon seclusion will not lie unless "the matter into which there was an intrusion is entitled to be private and is kept private by the plaintiff." *Whye*, 2013 WL 5375167, at *14 (citation omitted). Moreover, liability will not attach unless interference with the plaintiff's seclusion "is a substantial one . . . that would be highly offensive to the ordinary reasonable man,

as the result of conduct to which the reasonable man would strongly object." *Id.* Intrusion that occurs in a "reasonable, non-obtrusive manner" is not actionable. *Id.* (*citing Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1117 (Md. Ct. App. 1986)).

While replete with allegations concerning the underlying analytics technology and how it operates, Plaintiffs' Complaint fails to allege well-pleaded facts from which the Court could draw a reasonable inference that the Analytics Services were able to connect Plaintiffs' identities with the alleged PII/PHI they provided using the Website. *See Popa v. PSP Grp., LLC*, No. 23-cv-0294-JLR, 2023 WL 7001456, at *5, (W.D. Wash. Oct. 24, 2023) (dismissing a plaintiff's claims because she did not "allege that she entered any personally identifiable information into [a] website, that such information was captured by [the] [d]efendants, or that [the] [d]efendants were able to connect the information . . . collected to her identity"); *Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024) (Defendant claims that the lack of connection between the information Plaintiff allegedly disclosed and Plaintiff is fatal to her claim . . . [t]he Court agrees").

In a similar fashion, Plaintiffs fail to state a claim for intrusion upon seclusion because they have not alleged any conduct that would be highly offensive to a reasonable person. "Courts have construed offensive intrusion to require either an unreasonable manner of intrusion, or intrusion for an unwarranted purpose . . . [i]f the intrusion is conducted in a reasonable and non-obtrusive manner, it is not actionable." *Whye*, 2013 WL 5375167, at *14 (citations and quotation marks omitted) (alterations in original). Even assuming an intrusion is shown by SG's use of the Analytics Services' technology provided on the Website—which it is not—Plaintiffs do not allege any well-pleaded facts that demonstrate that SG's actions would be highly offensive to a reasonable person. *See, e.g.*, *Rullan v. Goden*, No. 12-CV-2412, 2014 WL 4926192, at *11 n.8 (D. Md. Sept. 30, 2014)

(finding no invasion of privacy where an employee's work email account was seized); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 72 (W.D. Pa. 2023) (dismissing an intrusion upon seclusion claim because the collection and disclosure of a website visitor's activity does not constitute the highly objectionable conduct needed to state a claim); *Whye*, 2013 WL 5375167, at *14 ("even if they had a privacy interest, the intrusion occasioned…was not highly offensive"). Plaintiffs' conclusory allegations that they "have a reasonable expectation of privacy in their private communications on the SGF Webpages, including their PHI" is not sufficient under *Iqbal* and *Twombly* because it is merely a bald accusation, unaccompanied by factual support. *Whye*, 2013 WL 5375167, at *4 (holding that the plausibility standard "demands more than bald accusations").

> (ii)   *SG did not intentionally (or unintentionally) intrude upon Plaintiffs' solitude based on their voluntary disclosure of their information.*

Based on the circumstances alleged in the Complaint, Plaintiffs fail to state a plausible claim for intrusion upon seclusion because they voluntarily consented to the alleged intrusion. Intent is a required element for intrusion upon seclusion—"the tort cannot be committed by unintended conduct amounting only to a lack of due care." *Gamble*, 846 F. Supp. 2d at 383 (D. Md. 2012) (*citing Bailer v. Erie Ins. Exch.,* 687 A.2d 1375, 1381 (Md. Ct. App. 1997)). Because intent must be shown, "[a]n intrusion upon seclusion claim requires that the matter into which there was an intrusion is entitled to be private and is kept private by plaintiff." *Barnhart v. Paisano Pubs., LLC*, 457 F.Supp.2d 590, 593 (D. Md. 2006).

Here, Plaintiffs' allegations in the Complaint demonstrate that they consented to the alleged intrusion by SG. Plaintiff Jane Doe alleges that after searching for a doctor and treatment location, she "used the 'Contact SGF' page to contact SGF" and "filled out the information requested, including providing her first and last name, city, state, date of birth, email address, phone number, and patient status, as well as the specific medical service she was interested in." (Complaint ¶ 16.)

Similarly, Plaintiff Jane Doe II used the "Schedule Appointment" page on the Website and provided "her first and last name, city, state, date of birth, email address, phone number, as well as the specific medical service (fertility treatment) and the doctor she was interested in." (Complaint ¶ 24). Accepting these allegations as true, Plaintiffs both concede that they voluntarily disclosed their alleged PII/PHI and thus they cannot state a plausible claim against SG for intrusion upon seclusion. *See, e.g.*, *Washington v. Glob. Tel\*Link Corp.*, No. 8:20-CV-01932-PX, 2022 WL 3647782, at \*4 (D. Md. Aug. 24, 2022) (observing that "[i]t is well established that a plaintiff's consent to the claimed invasion is a defense to the supposed intrusion"); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023) (reasoning that a defendant "cannot plausibly be considered to have intruded on, intercepted, or 'bugged' private communications that it was always the intended recipient of."); *Dinerstein v. Google*, LLC, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020), aff'd as modified, 73 F.4th 502 (7th Cir. 2023) ("the disclosures of private personal information 'do[] not support a claim for unauthorized intrusion.'"); *In re Trans Union Corp., Privacy Litig.*, 326 F. Supp. 2d 893, 901-03 (N.D. Ill. 2004) (dismissing an intrusion upon seclusion claim where a plaintiff voluntarily disclosed their information).

   (iii) *The Class Action Complaint fails to allege any well-pleaded facts establishing any damages or injury to Plaintiffs based on SG's activities.*

Finally, the Complaint fails to provide sufficient facts as to the alleged damages Plaintiffs sustained to justify a finding that SG intentionally intruded upon Plaintiffs' seclusion. Without providing such facts as to their damages, Plaintiffs fail to allege any actual harm based on the alleged intrusion and thus the cause of action for intrusion upon seclusion must be dismissed. *Beck*, 848 F.3d 274-75 (allegation that data breaches created an enhanced risk of future identity theft was too speculative).

      2.    <u>The Class Action Complaint Fails To Allege A Plausible Basis For Plaintiffs' Unjust Enrichment Claim Against SG.</u>

Plaintiffs fail to state a claim for unjust enrichment because they have not alleged sufficient facts regarding the alleged benefit conferred upon (or realized by) SG. Unjust enrichment "occurs when the plaintiff [1] confers a benefit on the defendant, [2] the benefit is known to the defendant, and [3] retention of that benefit by the defendant under those circumstances is inequitable." *Chassels v. Krepps*, 235 Md. App. 1, 18, 174 A.3d 896, 905-06 (Md. Ct. App. 2017). "Bald assertions and conclusory statements by the pleader will not suffice" to state a claim for unjust enrichment." *Mohiuddin v. Doctors Billing & Mgmt. Sols., Inc.*, 450, 9 A.3d 859, 866 (Md. Ct. App. 2010).

Plaintiffs' failure to allege any well-pleaded facts as to the benefit purportedly conferred upon SG warrants dismissal. The basis for the Complaint stems from Plaintiffs' interaction with the Website. Plaintiffs fail to allege, because they cannot, that any interactions they had with the Website conferred a benefit upon SG. Any compensation paid by Plaintiffs to SG would have been for medical services—and they do not allege that they did not receive the medical services they paid SG for. *See e.g., Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 1231, 1249 (D. Colo. 2018) (finding no unjust enrichment where plaintiffs "received the food services for which they paid."). In the absence of any non-conclusory allegations that SG received and retained a benefit based on Plaintiffs' interaction with the Website, Plaintiffs' unjust enrichment claim should be dismissed.

      3.    <u>Plaintiffs Fail To Allege Facts Showing Injury Or Causation Necessary To Maintain Their Claim Under The Maryland Consumer Protection Act.</u>

Plaintiffs fail to state a claim under the Maryland Consumer Protection Act because they have failed to allege injury based on any alleged deceptive practices or causation. The Maryland Consumer Protection Act provides for a private right of action for damages. *Williams v. Ewrit*

*Filings, LLC*, 268 A.3d 960, 964, *cert. denied sub nom. Writ Filings v. Williams*, A.3d 349 (Md. 2022). While a person may bring a private cause of action based on allegations of unfair or deceptive trade practices prohibited under the CPA's "laundry list" of prohibited acts, Maryland courts have noted, "the remedy under the [CPA] is limited to a consumer's 'injury or loss sustained . . . as a result of a practice prohibited by the CPA." *Citaramanis v. Hallowell*, 613 A.2d 964, 970 (Md. Ct. App. 1992) (explaining that, by contrast, public enforcement proceedings under the CPA may proceed regardless as to whether a consumer has been injured). *See also* Md. Code, Com. Law § 13-408 ("any person may bring an action to recover *for injury or loss sustained* by him as the result of a practice prohibited by this title") (emphasis added). A cause of action under the CPA "is purely compensatory [and] contains no punitive component . . . any punitive assessment under the CPA is accomplished by an imposition of a civil penalty recoverable by the State . . . as well as by criminal penalties[.]" *Golt v. Phillips*, 308 Md. 1, 12, 517 A.2d 328, 333 (1986).

Here, Plaintiffs allege that "SGF participated in and engaged in deceptive business or trade practices prohibited by the MCPA by failing to state and knowingly concealing, suppressing, and omitting the material fact that SGF was disclosing Plaintiffs' . . . private communications to third parties." (Complaint ¶ 114.) Even accepting this contention as true, which it is not, the Complaint lacks well-pleaded facts establishing Plaintiffs sustained *actual damages* under the CPA. *Citaramanis*, 613 A.2d at 970.

Plaintiffs also fail to allege any non-conclusory facts regarding causation—they simply allege they "suffered and will continue to suffer . . . actual damages" as well as "ascertainable loss" based on "overpayment for SGF's services and/or improper taking of their valuable data." Yet, the Complaint is silent as to the measure or damages as it relates to the "taking" of Plaintiffs' "valuable data" and lacks any non-speculative basis as to how use of the Analytics Services' technology on

the Website caused any alleged overpayment. Even accepting the Complaint's allegations as true, Plaintiffs' fail to allege facts to support the causation and injury elements their CPA claim and it should therefore be dismissed.

    4.    <u>The Complaint fails to establish a plausible claim under the Maryland Wiretapping and Electronic Surveillance Act.</u>

The Complaint's allegations fail to establish a plausible basis for SG's liability under the Maryland Wiretapping and Electronic Surveillance Act. The MWESA makes it unlawful to "[w]illfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." Md. Code, Com. Law § 10-402(a)(1). To establish liability under the Maryland Wiretap Act, a plaintiff must establish the defendant acted willfully in intercepting communications. *Earley v. Smoot*, 846 F.Supp. 451, 453 (D.Md.1994) (interpreting the Maryland Wiretap Act). The term "willfully" means "more than intentional or voluntary . . . [i]t denotes either an intentional violation or a reckless disregard of a known legal duty." *Id.* For the reasons explained above, Plaintiffs Complaint fails to allege any well-pleaded, non-conclusory facts regarding the nature of information transmitted to the Analytics Services by implementation of their technologies on the Website. In a similar fashion, Plaintiffs fail to allege sufficient facts evidencing SG's intent to violate the MWESA by implementing the Analytics Services' technology on the Website. *See Benford v. Am. Broad. Co.*, 649 F. Supp. 9, 10 (D. Md. 1986. To the contrary, SG's Notice of Privacy Practices cited by the Complaint cuts against any intent to violate the MWESA by its reference to Business Associates including those that provide software services. *See* Notice of Privacy Practices, https://www.shadygrovefertility.com/privacy/notice-privacy-practices (last accessed October 23, 2024). Plaintiffs' failure to adequately allege SG's intent under the MWESA alone should warrant dismissal of this cause of action.

## IV.
## CONCLUSION

For the forgoing reasons, Defendant Shady Grove Reproductive Science Center, P.C. respectfully requests that the Court grant this Motion to Dismiss, dismiss Plaintiffs' Class Action Complaint and causes of action with prejudice, and grant any further relief to which the Court finds Defendant is justly entitled.

    /s/ Jason D. Friedman
Jason D. Friedman (MD Bar 18898)
Laura Balson (*Pro Hac Vice to be filed*)
Brent Sedge (*Pro Hac Vice to be filed*)
Constangy, Brooks, Smith & Prophete, LLP
12500 Fair Lakes Circle, Suite 300
Fairfax, Virginia 22033
Telephone: (571) 522-6116
Facsimile:  (571) 522-6101
jfriedman@constangy.com
lbalson@constangy.com
bsedge@constangy.com

**COUNSEL FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

     I certify that on October 25, 2024 I electronically filed Defendant's Motion to Dismiss and Memorandum in Support with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                                      */s/ Jason D. Friedman*
                                                     Jason D. Friedman

                                         **COUNSEL FOR DEFENDANT**