## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANE DOE, JANE DOE II individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>SHADY GROVE REPRODUCTIVE SCIENCE CENTER, P.C.,<br><br>        Defendant. | Case No.: 8:24-cv-02368-ABA |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITY .......................................................................................................... ii

I.    INTRODUCTION .......................................................................................................... 1

II.   FACTUAL BACKGROUND........................................................................................ 1

III.  ARGUMENT.................................................................................................................. 4

    A.    THE COMPLAINT PROVIDES SUFFICIENT DETAIL SUPPORTING
         PLAINTIFFS' CLAIMS................................................................................. 4

    B.    PLAINTIFFS HAVE ARTICLE III STANDING........................................................ 7

    C.    PLAINTIFFS STATE A CLAIM FOR INTRUSION UPON SECLUSION............. 11

    D.    PLAINTIFFS SUFFICIENTLY PLED UNJUST ENRICHMENT ......................... 16

    E.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THEIR CLAIM UNDER THE
         MARYLAND CONSUMER PROTECTION ACT ("CPA")................................... 19

    F.    PLAINTIFFS SUFFICIENTLY ALLEGED THEIR MWESA CLAIM .................. 21

      i.    Plaintiffs Adequately Allege What Information was Intercepted. ............................ 21

      ii.   Plaintiffs Adequately Allege Defendant's Intent under MWESA............................. 23

IV.   CONCLUSION………………………………………………………………….…26

## TABLE OF AUTHORITY

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
No. 23-CV-03288-RFL, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) ................................. 17

*Allen v. CitiMortgage, Inc.*,
No. CIV. CCB-10-2740, 2011 WL 3425665 (D. Md. Aug. 4, 2011) ...................................... 19

*Alston v. Freedom Plus/Cross River*,
No. CV TDC-17-0033, 2018 WL 770384 (D. Md. Feb. 7, 2018) ............................................ 8

*Antman v. Uber Techs., Inc.*,
No. 3:15-CV-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 5

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ........................................................................................ 10, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 4, 5

*Benford v. Am. Broad. Co.*
649 F. Supp. 9 (D. Md. 1986) ....................................................................................... 24, 25

*Bond v. PolyCycle, Inc.*,
127 Md. App. 365 (1999) ................................................................................................... 23

*Bray v. Gamestop Corp.*,
No. 1:17-CV-1365, 2018 WL 11226516 (D. Del. Mar. 16, 2018) ......................................... 18

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ........................................................................................... 16

*Castillo v. Costco Wholesale Corp.*,
No. 2:23-CV-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024).................... 17, 21

*Citaramanis v. Hallowell*,
613 A.2d 964 (Md. Ct. App. 1992) ....................................................................................... 20

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ..................................................................................... 13

*Cooper v. Mount Sinai Health Sys., Inc.*,
No. 23 CIV. 9485 (PAE), 2024 WL 3586357 (S.D.N.Y. July 30, 2024) ............................... 24

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .................................................................................. 22

*Decoster v. Becerra*,
119 F.4th 332 (4th Cir. 2024) ......................................................................................... 4, 5

*Deibler v. State*,
365 Md. 185 (2001) ........................................................................................................... 24

*Dinerstein v. Google*, *LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) .................................................................................. 14

*Doe I v. Google LLC*,
No. 23-cv-02431, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) ............................................ 11

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ................................... 8

*Doe v. Medstar Health, Inc.*,
No. 24-C-20-000591, 2020 WL 14005240 (Md. Cir. Ct. Aug. 05, 2020) ..................... 8, 11, 14

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ................................................................................ 25

*Doe v. N. Cal. Fertility Med. Ctr.*,
No. 22-CV-01861-DAD-JDP, 2024 WL 246178 (E.D. Cal. Jan. 23, 2024) ................ 13, 15, 16

*Doe v. Regents of Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .................................................................................. 11

*Doe v. Tenet Healthcare Corp.*,
No. CV 23-12978-PBS, 2024 WL 1756075 (D. Mass. Apr. 23, 2024) ............................ 12, 18

*Fox v. Iowa Health Sys.*,
399 F. Supp. 3d 780 (W.D. Wis. 2019) ................................................................................. 18

*Frasco v. Flo Health, Inc.*,
No. 21-CV-00757-JD, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) .................................... 25

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) ............................................................................................ 8, 9

*Gladstone v. Amazon Web Servs., Inc.*,
No. 2:23-CV-00491-TL, 2024 WL 3276490 (W.D. Wash. July 2, 2024) ............................... 25

*Golt v. Phillips*,
308 Md. 1 (1986) ............................................................................................................ 20

*Gordon v. Chipotle Mexican Grill, Inc.*,
344 F. Supp. 3d 1231 (D. Colo. 2018) .................................................................................. 18

*Guthartz v. Park Ctr. W. Corp.*,
No. 07-80334-CIV, 2009 WL 278960 (S.D. Fla. Feb. 5, 2009) ............................................ 25

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 (C.D. Cal. July 19, 2024) .............. 22

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-CV-08002-SPG-E, 2024 WL 1626114 (C.D. Cal. Apr. 2, 2024) ........................... 22

*Howard v. Lab'y Corp. of Am.*,
No. 1:23-CV-00758, 2024 WL 4250677 (M.D.N.C. Aug. 8, 2024) ........................................ 9

*Howe v. Md. Dep't of Pub. Safety & Corr. Servs.*,
No. GLR-24-1896, 2024 WL 4825782 (D. Md. Nov. 19, 2024) ............................................... 5

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) ................................................................................................. 10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ................................................................................................. 11

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................................... 24

*In re Google Inc. Cookie Placement Consumer Priv.*,
806 F.3d 125 (3d Cir. 2015) ................................................................................................... 12

*In re Grp. Health Plan Litig.*,
No. 23-cv-267, 2023 WL 8850243 (D. Minn. Dec. 21, 2023) ............................................... 11

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ......................................................................... 18, 20, 21

*In re Meta Pixel Tax Filing Cases*,
No. 22-cv-07557-PCP, 2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) .................................. 25

*In re Trans Union Corp., Privacy Litig.*,
   326 F. Supp. 2d 893 (N.D. Ill. 2004) ..................................................... 14

*Irwin v. Jimmy John's Franchise, LLC*,
   175 F. Supp. 3d 1064 (C.D. Ill. 2016) .................................................... 18

*Kane v. Univ. of Rochester*,
   No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ................... 17

*Kim v. Maryland State Bd. of Physicians*,
   423 Md. 523 (2011) ........................................................................ 23

*Kurowski v. Rush Sys. for Health*,
   683 F. Supp. 3d 836 (N.D. Ill. 2023) .................................................... 14

*Lacks v. Ultragenyx Pharm., Inc.*,
   No. CV DLB-23-2171, 2024 WL 2273385 (D. Md. May 20, 2024) ....................... 16

*Lloyd v. Gen. Motors Corp.*,
   397 Md. 108 (2007) ........................................................................ 20

*Lopez v. Apple, Inc.*,
   519 F. Supp. 3d 672 (N.D. Cal. 2021) ................................................... 24

*M.R. v. Salem Health Hosps. and Clinics*,
   No. 6:23-cv-01691-AA, 2024 WL 3970796 (D. Or. Aug. 28, 2024) ............ 11, 12, 17

*Marchese v. JPMorgan Chase Bank, N.A.*,
   917 F. Supp. 2d 452 (D. Md. 2013) ...................................................... 19

*Marek v. Molson Coors Beverage Co.*,
   580 F. Supp. 3d 848 (N.D. Cal. 2022) ................................................... 25

*Mcnaney v. Am. Collections Enter., Inc.*,
   No. 1:23-CV-02396-JRR, 2024 WL 3013158 (D. Md. June 14, 2024) ................... 11

*Mikulsky v. Noom, Inc.*,
   No. 3:23-CV-00285-H-MSB, 2024 WL 251171 (S.D. Cal. Jan. 22, 2024) ............... 12

*Mustafa v. State*,
   323 Md. 65 (1991) ......................................................................... 21

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
   779 F.3d 1036 (9th Cir. 2015) ........................................................... 25

*Opperman v. Path, Inc.*,
  84 F. Supp. 3d 962 (N.D. Cal. 2015) ....................................................... 16

*Persinger v. Southwest Credit Sys., L.P.*,
  20 F.4th 1184 (7th Cir. 2021)................................................................ 16

*Popa v. PSP Grp., LLC*,
  No. 23-cv-0294-JLR, 2023 WL 7001456, (W.D. Wash. Oct. 24, 2023) ............... 12

*Pruitt v. Resurgent Cap. Servs., LP*,
  No. 21-cv-2615-JKB, 2022 WL 2530408 (D. Md. July 7, 2022) ...................... 10

*R.C. v. Walgreen Co.*,
  No. EDCV 23-1933 JGB (SPX), 2024 WL 2263395 (C.D. Cal. May 9, 2024) ....... 24

*Rodriguez v. FastMed Urgent Care, P.C.*,
  No. 5:23-CV-403-D, 2024 WL 3541582 (E.D.N.C. July 24, 2024)...................... 8

*Rullan v. Goden*,
  No. 12-CV-2412, 2014 WL 4926192 n.8 (D. Md. Sept. 30, 2014) ..................... 13

*Sager v. Hous. Comm'n*,
  855 F. Supp. 2d 524 (D. Md. 2012) ........................................................ 19

*Senior Executives Ass'n v. United States*,
  No. 8:12-CV-02297-AW, 2013 WL 1316333 (D. Md. Mar. 27, 2013)................... 8

*Smith v. Google, LLC*,
  No. 23-CV-03527-PCP, 2024 WL 2808270 (N.D. Cal. June 3, 2024)................... 25

*Smith v. Loyola Univ. Med. Ctr.*,
  No. 23 CV 15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024)........................... 21

*St. Aubin v. Carbon Health Techs., Inc.*,
  No. 24-CV-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .................. 22

*St. Luke Inst., Inc. v. Jones*,
  242 Md. App. 617 (2019)...................................................................... 14

*Stamat v. Grandizio Wilkins Little & Matthews, LLP*,
  No. CV SAG-22-00747, 2022 WL 3919685 (D. Md. Aug. 31, 2022).................... 10

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................. 7

*Venkatraman v. REI Sys.*,
    417 F.3d 418 (4th Cir. 2005) .................................................................... 5

*Wallace v. Health Quest Sys., Inc.*,
    No. 20 CV 545 (VB), 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ...................... 18

*Washington v. Glob. Tel\*Link Corp.*,
    No. 8:20-CV-01932-PX, 2022 WL 3647782 (D. Md. Aug. 24, 2022) ................... 14

*Wheeling v. Selene Fin. LP*,
    473 Md. 356 (2021) .............................................................................. 20

*Whye v. Concentra Health Servs., Inc.*,
    No. 12-cv-3432-ELH, 2013 WL 5375167 (D. Md. Sept. 24, 2013) ....................... 13

*Williams v. E. Baton Rouge City/Par.*, No. CV 23-01581-BAJ-EWD,
    2024 WL 4241627 (M.D. La. Sept. 19, 2024) .............................................. 22

**Statutes**

18 U.S.C. § 2510(8) ..................................................................................... 22

18 U.S.C. §§ 2510–2520 .............................................................................. 21

Md. Code Ann., Cts. & Jud. Proc. §10-402(a)(1), (3) ............................................ 21

Md. Code Ann., Cts. & Jud. Proc. § 10-401 ...................................................... 9

Md. Code Ann., Cts. & Jud. Proc. § 10-401(4) .................................................. 21

Md. Code Ann., Health-Gen. § 4-302.5 (West) ................................................... 14

Md. Code Ann., Health-Gen. § 4-302(e)(1) (West) .............................................. 14

Md. Code, Com. Law § 13-408(a) .................................................................... 19

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 25

## I.    INTRODUCTION

Shady Grove Reproductive Science Center, P.C.'s ("Shady Grove") is a medical provider specializing in fertility treatment. But unlike most medical providers, Shady Grove chose to share private health data about its existing, prospective, and past patients with third parties. Shady Grove did so despite its patients' obvious expectation of privacy in their own health data, its promises to patients that it would not disclose this type of information, countless laws designed to ensure health data remains private, and two years' worth of government warnings to medical providers like Shady Grove not to do so.

Shady Grove's attempts to avoid liability for its misconduct fail. Its claim that its conduct is not harmful or injurious is plainly inconsistent with the law, which recognizes that the disclosure of identifiable health data constitutes a traditional privacy harm sufficient to establish Article III standing and injury. Its separate claim that Plaintiffs' allegations are too generalized or conclusory cannot be reconciled with the Class Action Complaint's ("Complaint") clear allegations outlining exactly how and when Shady Grove disclosed health data. And its challenges to the merits of Plaintiffs' claims, most of which repeat its assertions that the disclosure of health data is not actionable or that Plaintiffs' allegations are non-specific, fail for the same reasons.

For the reasons described herein, Shady Grove's Motion to Dismiss ("Motion") should be denied in its entirety.

## II.    FACTUAL BACKGROUND

Shady Grove is a medical provider with over 50 locations in 10 states. Complaint, ECF No. 1, ¶ 1.[1] It specializes specifically in fertility treatment services, including fertility testing, Intrauterine Insemination (IUI), and In Vitro Fertilization (IVF). *Id.* In connection with providing

---

[1] "¶" is used herein to refer to the Class Action Complaint, ECF No. 1.

fertility treatment services, it owns and operates the website www.shadygrovefertility.com. ¶¶ 2, 32. On this website, Shady Grove provides ways through which new, prospective, and existing patients can schedule appointments (the "Schedule Appointment Page"), contact Shady Grove directly (the "Contact Shady Grove Page"), and locate specific fertility providers (the "Find a Doctor Page") and fertility clinic locations (the "Find a Location Page") (collectively, the "SG Webpages"). ¶¶ 2-6.

Government regulators, including the Federal Trade Commission ("FTC"), Office for Civil Rights ("OCR"), and Department of Health and Human Services ("HHS"), have long warned healthcare providers like Shady Grove not to incorporate third-party tracking technology on these types of webpages. ¶¶ 35-38. This is because these tracking technologies are specifically designed to intercept and share the user's interactions on the webpage with the tracking technology provider and, therefore, are not appropriate on pages used to convey personal health data that consumers expect to remain private. ¶¶ 51-52. This is especially true, as the data transmitted through this technology is not anonymized. ¶¶ 11, 54. Quite the opposite, the data is sent alongside multiple user and device identifiers specifically so the individual can be uniquely identified. ¶ 54. And, worse, many of the companies who offer this type of technology, including Meta Platforms, Inc. ("Meta") and Google, LLC ("Google"), use this data for their *own* purposes, making it particularly inappropriate to use this technology on pages that convey health information. ¶¶ 11, 53.

Shady Grove did not heed this warning. It incorporated a swath of tracking technology on its Schedule Appointment Page, Contact Shady Grove Page, Find a Doctor Page, and Find a Location Page, including those offered by Meta, Google, and Microsoft Corp. ("Microsoft"). ¶ 50. Data collected using this tracking technology is sent to third parties (including Meta, Google, and Microsoft) who process and use the data to provide analytics, as well as for their own

purposes, including to fuel their lucrative advertising businesses, profile individuals, and improve their products. ¶¶ 52-54.

Plaintiffs are Shady Grove patients who used these webpages. ¶¶ 14, 22. Plaintiff Jane Doe and Jane Doe II both searched for fertility providers and clinics using Shady Grove's Find a Doctor and Find a Location Pages. ¶¶ 15, 23. Plaintiff Jane Doe visited and completed the form provided on the Contact Shady Grove Page and Plaintiff Jane Doe II visited and completed the form on the Schedule Appointment Page. ¶¶ 16, 24. Through the tracking technology Shady Grove incorporated on these pages, Shady Grove disclosed to third parties Plaintiffs' personal and identifiable health data revealing, at least: (1) the name of the fertility providers they searched, (2) the specific fertility clinics they searched, and (3) that they scheduled an appointment at Shady Grove, the specific type of appointment requested, and/or that they otherwise contacted Shady Grove, a fertility provider. ¶ 19; *see also* ¶¶ 55-57 (examples of transmissions from the Schedule Appointment Page, disclosing unique identifiers alongside appointment request and specific type of appoint requested (i.e., intrauterine insemination)).

Plaintiffs had no way of knowing Shady Grove would disclose this private health data because this technology was secretly incorporated in a manner undetectable to the average person. ¶¶ 11, 18, 48-49, 51-52, 59, 73-75. Nor would they expect it, given Shady Grove's express promise to users in its Notice of Privacy Practices that it was "committed to protecting" their privacy and would "maintain the confidentiality of [users'] protected health information[.]" ¶¶ 9, 47. Shady Grove expressly stated that it would not "use or disclose [users'] PHI" unless otherwise stated therein without "written authorization." *Id.* Nowhere in that policy did Shady Grove state that it would disclose identifiable health data to some of the largest advertisers in the world, including Google and Meta, and certainly not that those entities would use this private data for their own

benefit.[2] *Id.* Based on these statements, Plaintiffs reasonably expected their private health information and communications with Shady Grove would remain private. ¶ 48.

Shady Grove's actions undoubtably constitute a privacy violation, and one which Shady Grove knew was occurring. Even if Shady Grove somehow was unaware of its duties to keep such personal information private and the abundance of warnings from government regulators over the last two years to ensure such data was not being collected and transmitted, it cannot deny the express purpose of these tracking technologies it incorporated on its webpages is—specifically—data sharing. ¶¶ 33, 34.

Nor can it deny that it knew what *types* of data it was giving to third parties through this technology. *Id.* Shady Grove incorporated this technology on webpages, including the Schedule Appointment Page, that are specifically used to convey personal health information, including treatment and patient status. ¶¶ 55-57. And the third parties with whom it shared this information, including Google, Meta, and Microsoft, all provided Shady Grove with analytics outlining the types of data they were receiving from Shady Grove. ¶¶ 33-34. Despite these facts, at no point did Shady Grove stop sharing this information with the third parties identified above. ¶ 38. Shady Grove's actions violate users' privacy and several other laws. ¶¶ 93-140.

## III.    ARGUMENT

### A.    THE COMPLAINT PROVIDES SUFFICIENT DETAIL SUPPORTING PLAINTIFFS' CLAIMS

The purpose of a complaint is to provide "enough facts to state a claim to relief that is plausible on its face." *Decoster v. Becerra*, 119 F.4th 332, 337 (4th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This simply requires that the complaint contain

---

[2]    The full Notice of Privacy Practices is available here: https://www.shadygrovefertility.com/privacy/notice-privacy-practices (last accessed Nov. 27, 2024).

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Decoster*, 119 F.4th at 337 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A "complaint does not need 'detailed factual allegations' to survive a motion to dismiss" and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Howe v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. GLR-24-1896, 2024 WL 4825782, at *4 (D. Md. Nov. 19, 2024) (quoting *Twombly*, 550 U.S. 563). In addition, the court is to "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys.*, 417 F.3d 418, 420 (4th Cir. 2005) (internal citation omitted).

The Complaint readily clears this threshold. Plaintiffs allege exactly what tracking technology was used by Shady Grove, what pages of its website it chose to incorporate this technology on, and the specific types of identifiable health data transmitted to third parties as a result. ¶¶ 3-6, 13-28, 50-58. The Complaint further explains that Shady Grove did not disclose that it shared health data through third party tracking technology, and, in fact, represented it would not do so. ¶¶ 47-48. This is sufficient to provide Shady Grove with notice of the basis for Plaintiffs' claims.

Shady Grove's argument that the Complaint contains only "generalizations" and "conclusory" allegations, and that Plaintiffs fail to provide sufficient "factual enhancement" regarding Shady Grove's use of tracking technology, is wrong. *See* Motion to Dismiss ("Mot." or "Motion"), ECF No. 23, at 1-3. Indeed, Plaintiffs provide nearly all of the detailed "allegation[s]" Shady Grove claims are missing, as set out below:

| Assertion | Allegation(s) |
|---|---|
| Arguing Plaintiffs do not allege the "configuration" of the tracking technology or how it "behaved" on the Shady Grove "website[.]" Mot. at 1-3. | ¶ 51 (alleging the tracking technology is a "small piece of JavaScript measurement code" that intercepts "user's interaction with the webpage" including the "specific pages they visit" and "collects identifiable information, such as the unique user and device identifiers (e.g. GUID, Client ID, c_user cookie) and IP address").<br><br>¶ 54 (alleging how the tracking technology behaved on the SG Webpages and caused the disclosure of "identifiable information (e.g., unique user and device identifiers, like GUID, Client ID, c_user cookie, and IP Addresses) and private communications, including patient status, requests for appointments, the provider and/or location Plaintiffs . . . sought for fertility services, and that Plaintiffs . . . contacted SGF for fertility treatment.").<br><br>¶ 55-57 (actual examples of transmissions from the SG Webpages through the incorporated tracking technology). |
| Claiming Plaintiffs have not plead "factual enhancements" about the "communications" or "specific information" disclosed to third parties. Mot. at 2-3.<br><br>Claiming Plaintiffs allege "bare assertions devoid of factual enhancement" that their "private communications" were disclosed. Mot. at 7. | ¶¶ 54-55 (above).<br><br>¶ 19 (alleging Jane Doe's private communications included "(1) the name of the fertility provider that she searched for using the "Find a Doctor" page; (2) the specific SGF location she intended to visit; and (3) that Plaintiff Jane Doe contacted her fertility provider, SGF, for fertility services.").<br><br>¶ 27 (alleging Jane Doe II's private communications included "(1) the name of the fertility provider that she searched for using the "Find a Doctor" page; and (2) that she scheduled an appointment with the fertility provider for specific medical services, along with her PII."). |
| Claiming allegations of harm are "generalized" and "barebone[.]" Mot. at 8. | ¶¶ 63-71 (alleging violation of privacy interests, as well as studies and statistics supporting objective expectation of privacy).<br><br>¶¶ 104-107 (alleging unjust benefits in the |

| | form of "valuable" PHI and "analytics, insights, and advertisements"). |
| | |
| | ¶ 121 (alleging that Plaintiffs "would not have used" the SF Webpages or "provided their PHI"). |
| | |
| | ¶ 122 (alleging Plaintiffs "would not have use or paid money" for Shady Grove's "medical services" or "would have paid less"). |
| Arguing there are no allegations supporting a "reasonable inference" that third parties could identify Plaintiffs. Mot. at 11. | ¶ 50 (explaining transmission included "identifiable information" including "user and device identifiers and IP Addresses"). |
| | |
| | ¶¶ 54-57 (listing transmitted user and device identifiers, including "GUID, Client ID, c_user cookie" "vid" and "fbp"). |

Removing Shady Grove's mischaracterization of the Complaint's allegations is fatal to its Motion as, once these factual allegations are considered, it is clear that Plaintiffs plausibly allege each of their claims. The Court should reject Shady Grove's incorrect classification of Plaintiffs' allegations.

## B.    PLAINTIFFS HAVE ARTICLE III STANDING

A plaintiff has Article III standing if they allege (1) "injury in fact"; (2) that was "likely caused by the defendant"; and (3) "that the injury would likely be redressed by judicial relief." *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Shady Grove does not argue, and therefore concedes, that Plaintiffs satisfy the traceability and redressability elements of Article III standing. Mot. at 5-9. Its argument that Plaintiffs cannot establish injury-in-fact fails because it is inconsistent with black letter law.

The Supreme Court has repeatedly confirmed that privacy violations are traditional, common law harms sufficient to establish injury-in-fact. *See TransUnion LLC*, 594 U.S. at 425 (2021) (explaining "[c]hief among" the "harms traditionally recognized" are "disclosure of private

information [] and intrusion upon seclusion"). So has the Fourth Circuit. *See Senior Executives Ass'n v. United States*, No. 8:12-CV-02297-AW, 2013 WL 1316333, at *6 (D. Md. Mar. 27, 2013) ("Following in the Supreme Court's footsteps, the Fourth Circuit has long recognized a right to privacy in personal information."); *see also Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) (recognizing "a legally cognizable privacy injury" establishes "Article III standing"); *Alston v. Freedom Plus/Cross River*, No. CV TDC-17-0033, 2018 WL 770384, at *3 (D. Md. Feb. 7, 2018) (finding Article III standing because plaintiff alleged an "invasion of her privacy rights").

Here, Plaintiffs have alleged facts demonstrating Article III standing. *See* ¶¶ 14-20, 22-28, 99-100, 122, 140. Plaintiffs reasonably expected that their communications relating to fertility services would remain private. ¶¶ 8, 10, 63-71. Contrary to Plaintiffs' expectation, Shady Grove shared their communications with third parties including Google, Meta, and Microsoft. ¶¶10-11. Shady Grove's disclosure of their identifiable health data—including the fact that they scheduled appointments or contacted Shady Grove for fertility treatment—is a privacy violation. *See Doe v. Medstar Health, Inc.*, No. 24-C-20-000591, 2020 WL 14005240, at *1 (Md. Cir. Ct. Aug. 05, 2020) (sustaining invasion of privacy claims premised on defendant's disclosure of identifiable health data, including "search queries about specific doctors" and "treatments"); *Rodriguez v. FastMed Urgent Care, P.C.*, No. 5:23-CV-403-D, 2024 WL 3541582, at *3 (E.D.N.C. July 24, 2024) (finding the alleged disclosure of an individuals' "appointments" "past, present, or future health conditions" and "treatments" "satisfies Article III's injury requirement").[3]

---

[3] That Shady Grove argues its disclosure of private health data should "hardly [be] surprising" to Plaintiffs is reprehensible. Mot. at 7. The common law, social norms, and countless statutory schemes, including the Health Insurance Portability and Accountability Act ("HIPAA"), make clear that health data should not and cannot be disclosed without express written authorization, which Shady Grove did not have. *See, e.g., Rodriguez*, 2024 WL 3541582 at *3 (explaining "patient status" and "appointments" are "protected under HIPAA"); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *2 (N.D. Cal. Apr. 11, 2024)

In addition, Plaintiffs have Article III standing because they allege a substantive violation of the Maryland Wiretapping and Electronic Surveillance Act ("MWESA") (Md. Code Ann., Cts. & Jud. Proc. § 10-401). Shady Grove's violation of Plaintiffs' statutorily protected right to privacy in communications containing medical information provides an independent basis for Article III standing under settled Fourth Circuit law. *See Garey*, 35 F.4th at 921  (holding that where a statute is "aimed squarely as 'the right of the plaintiff . . . to be left alone[]'" a violation of the statute establishes "Article III standing"); *Howard v. Lab'y Corp. of Am.*, No. 1:23-CV-00758, 2024 WL 4250677, at *6 (M.D.N.C. Aug. 8, 2024), *report and recommendation adopted*, No. 1:23-CV-758, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) (explaining "violations of . . . privacy-protecting statutes" like state wiretapping laws establish "concrete injury").

Shady Grove argues that Plaintiffs cannot establish injury-in-fact because they only allege a bare procedural violation of a statute and/or a hypothetical risk of future harm that has yet to occur. Mot. at 7, 9. Both arguments are wrong.

Shady Grove's disclosure of highly sensitive information to third party advertisers is simply not a "bare procedural violation" of MWESA. *See Howard*, 2024 WL 4250677, at *6. This egregious misconduct violated each Plaintiff's statutorily protected substantive right to privacy, conferring Article III standing in the process. *See Garey,* 35 F.4th at 921.

Similarly, Shady Grove's future-harm argument is dead on arrival as Plaintiffs' alleged harms have *already occurred*. ¶¶ 14-20, 22-28. Unlike the data breach cases Shady Grove relies on—where the plaintiffs asserted claims based solely on the *future* risk of "identity theft, fraud, or financial harm" (Mot. at 7)—Plaintiffs are not waiting for standing to attach because Shady Grove already harmed Plaintiffs and violated their privacy rights and the MWESA the moment it

---

(explaining a HIPAA "covered entity" may not "disclose protected health information without an authorization").

disclosed their communications to third party advertisers. Mot. at 7 (citing *Beck v. McDonald*, 848 F.3d 262, 274–75 (4th Cir. 2017) (finding allegations of future risk of harm in a data breach action were speculative because there was no evidence, after three years, that stolen data was ever "accessed or misused" even after plaintiffs had taken "extensive discovery"); *Antman v. Uber Techs., Inc.*, No. 3:15-CV-01175-LB, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) (rejecting future risk of harm as sufficient to establish standing in data breach action because the data compromised presented no "obvious, credible risk of identity theft").

Shady Grove's separate argument that Plaintiffs' allegations of harm are pled at "too high a level of generality" also misses the mark. Mot. at 7-9. At the pleading stage, Article III standing requires nothing more than "general factual allegations of injury resulting from the defendant's conduct." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018). Plaintiffs far surpass that low threshold by alleging (although not required) where, when, how, and what health information was disclosed by Shady Grove, and the precise nature of their injuries. *See supra,* Sections II, III.A.

The cases Shady Grove relies upon are inapposite. Mot. at 9 (citing *Pruitt v. Resurgent Cap. Servs.*, LP, No. 21-cv-2615-JKB, 2022 WL 2530408, at *5 (D. Md. July 7, 2022) (holding plaintiff lacked standing because only harm alleged was general "confus[ion]" after receiving debt collection letter); *Stamat v. Grandizio Wilkins Little & Matthews, LLP*, No. CV SAG-22-00747, 2022 WL 3919685, at *7 (D. Md. Aug. 31, 2022) (finding "bare assertions of emotional injury" insufficient to establish standing in data breach action)). Unlike the confusion alleged is *Pruitt* and non-descript emotional harms alleged in *Stamat*, the Supreme Court and Fourth Circuit have both confirmed privacy harms, like those alleged by Plaintiffs here, establish injury-in-fact.

### C.    PLAINTIFFS STATE A CLAIM FOR INTRUSION UPON SECLUSION

Pleading a claim for intrusion upon seclusion under Maryland law requires plausible allegations that a defendant intentionally intruded upon a plaintiff's "solitude, seclusion, private affairs, or concerns in a manner that would be highly offensive to a reasonable person." *Mcnaney v. Am. Collections Enter., Inc.*, No. 1:23-CV-02396-JRR, 2024 WL 3013158, at *10 (D. Md. June 14, 2024).

Here, there is no question that Plaintiffs have an objectively reasonable expectation of privacy in their own health data (*Doe I v. Google LLC*, No. 23-cv-02431, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) ("There is a reasonable expectation of privacy in one's private health information."); *Doe v. Regents of Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (explaining "[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person"))[4] the disclosure of which is highly offensive. *See Doe v. Medstar Health, Inc.*, 2020 WL 14005240, at *3 (holding that disclosure of patients' clicks to "FindADoctor" could be found to be highly offensive); *M.R. v. Salem Health Hosps. and Clinics*, No. 6:23-cv-01691-AA, 2024 WL 3970796 at *6 (D. Or. Aug. 28, 2024) (disclosure of "personal medical information" would likely be highly offensive to a reasonable person); *In re Grp. Health Plan Litig.*, No. 23-cv-267, 2023 WL 8850243, at *3 (D. Minn. Dec. 21, 2023) (finding disclosure of sensitive health information went beyond "vanilla[] browsing history" and was highly offensive). Shady Grove's conduct here is *particularly* offensive because of the manner in which it disclosed Plaintiffs' health data. Shady Grove incorporated this tracking technology

---

[4] This expectation is compounded by Shady Grove's promise that it would not disclose health data to third parties without written authorization. *See* Section II; *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (explaining a company's representations to users that it would not collect certain data was indicative of plaintiff's expectation of privacy in that information).

that shared their medical information surreptitiously in a manner ordinary individuals could not detect (¶ 59), while expressly representing to them that their health data would remain "confidential" and would not be disclosed without "written authorization." ¶ 61. This is sufficient to state a claim for intrusion upon seclusion. *See In re Google Inc. Cookie Placement Consumer Priv.*, 806 F.3d 125, 151 (3d Cir. 2015) (finding defendant's conduct "highly offensive" where the defendant's conduct was surreptitious and sustaining invasion of privacy claim).

Shady Grove's argument that the Complaint fails to set forth any allegations supporting a "reasonable inference" that the data was identifiable (Mot. at 10) is just wrong. *See* Section II, III.A. Unlike in the two cases Shady Grove cites, Plaintiffs allege that the health data transmitted was, in fact, identifiable through numerous unique identifiers assigned both to Plaintiffs and their devices. *Compare* ¶¶ 50-51, 54-57 *with* Mot. at 10 (citing *Popa v. PSP Grp., LLC*, No. 23-cv-0294-JLR, 2023 WL 7001456, at *5, (W.D. Wash. Oct. 24, 2023) (lacking allegations that the data was "identifiable" or that the defendants could "connect the information" to the plaintiff's "identity"); *Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024) (alleging only "non-individually identifiable data" was collected with no allegations that the information could be "connect[ed]" to plaintiff)).

Defendant's contention that disclosure of health data is not highly offensive is inconsistent with the cases cited above, as well as several other decisions from around the country. *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *6 (sustaining invasion of privacy claim where disclosure of information such as "booking of appointments" was highly offensive); *Doe v. Tenet Healthcare Corp.*, No. CV 23-12978-PBS, 2024 WL 1756075, at *2 (D. Mass. Apr. 23, 2024) (sustaining Massachusetts Right to Privacy Law claim where hospital defendant disclosed plaintiff's identity, request for medical treatment, and appointment time and location); *Doe v. N.*

*Cal. Fertility Med. Ctr.*, No. 22-CV-01861-DAD-JDP, 2024 WL 246178, at *6 (E.D. Cal. Jan. 23, 2024) (internal quotations omitted) (sustaining privacy claim and noting that disclosure of medical information is likely an  "egregious breach of the social norms" that is "highly offensive").

Shady Grove misleadingly lumps together its offensive conduct involving sensitive health information with cases involving innocuous types of data (Mot. at 12 (citing *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 72 (W.D. Pa. 2023) (involving anonymous browsing activity on GameStop's website)) or entirely *different* types of information in entirely *different* contexts. *Id.* (citing *Whye v. Concentra Health Servs., Inc.*, No. 12-cv-3432-ELH, 2013 WL 5375167, at *14 (D. Md. Sept. 24, 2013), *aff'd*, 583 F. App'x 159 (4th Cir. 2014), (no expectation of privacy in "deep lung breath" when reporting for alcohol and drug tests "mandated by [the] employer" for a "legitimate job-related reason"); *Rullan v. Goden*, No. 12-CV-2412, 2014 WL 4926192, at *11 n.8 (D. Md. Sept. 30, 2014) (noting in passing that plaintiff could not state a privacy claim against business "partner" for "seiz[ing] control" of their work email account)). These types of cases are not comparable to Shady Grove's disclosure of private health data without consent.

Shady Grove's claim that it could not have acted intentionally because Plaintiffs "consented" to the disclosure of their health data simply by providing it to Shady Grove in connection with medical treatment is illogical and unsupported by Plaintiffs' allegations. Mot. at 12. No court has recognized this kind of automatic waiver of privacy in medical information, especially when shared with a healthcare provider. Shady Grove's position is inconsistent with numerous laws requiring that a healthcare entity, like Shady Grove, obtain express written authorization ***prior*** to disclosing health data to third parties (*see* Section II), including Maryland law, which provides that a "health care provider may not disclose a patient's record to a third party without the patient's permission" and "a person may not disclose by sale, rental, or barter any

13

medical record". Maryland's Confidentiality of Medical Records Act ("MCMRA"), Md. Code Ann., Health-Gen. § 4-302(e)(1) (West); *id.* § 4-302(a); *see also St. Luke Inst., Inc. v. Jones*, 242 Md. App. 617, 625, 216 A.3d 49, 53 (2019), *aff'd sub nom., Saint Luke Inst., Inc. v. Jones*, 471 Md. 312, 241 A.3d 886 (2020). Reproductive health care services are subject to even more stringent protections regarding unauthorized transmission. Md. Code Ann., Health-Gen. § 4-302.5 (West).

The cases Shady Grove cites in support its position are wholly inapposite. Three of the cases concern ***Illinois law***, which, unlike Maryland, does not recognize privacy claims based on the disclosure of private information. *Compare Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023) (denying claim because intrusion upon seclusion under Illinois law does not encompass the "disclosure of private personal information"); *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020), *aff'd as modified*, 73 F.4th 502 (7th Cir. 2023) (same); *In re Trans Union Corp., Privacy Litig.*, 326 F. Supp. 2d 893, 901-03 (N.D. Ill. 2004) (same)), *with Doe v. Medstar Health, Inc.*, No. 24-C-20-000591, 2020 WL 14005240, at *3 (Md. Cir. Ct. Aug. 05, 2020) (sustaining privacy claims premised on disclosure of health data through a healthcare provider's use of tracking technology on its "FindADoctor" page). The only Maryland case it cites found that a prison did not commit an intrusion by listening to prisoners' phone calls because they were "plainly and repeatedly forewarned that all calls placed . . . are monitored and recorded by the prison." *Washington v. Glob. Tel\*Link Corp.*, No. 8:20-CV-01932-PX, 2022 WL 3647782, at *4 (D. Md. Aug. 24, 2022). Nothing in this decision supports anything approaching Shady Grove's suggested broad, automatic waiver of one's right to privacy in sensitive information disclosed to a health care provider.

Shady Grove also cannot argue that its Notice of Privacy Practices establish consent. That document states Shady Grove may share PHI with non-specified "business associates" to "**assist us in our delivery of health care and related services.**" Mot. at 4. The example of such a business associate is an entity that provides Shady Grove with "administrative and business support services" including "billing and collection services and technology and technology support services." *Id.* This passage further states that, before individuals' information is disclosed to a "business associate," Shady Grove "will have a written contract with the business associate that will require the business associate to maintain the privacy of your PHI in accordance with HIPAA." *Id.* Meta, Google, Microsoft and the similar third parties are not remotely like the "business associates" contemplated in this document, nor do they "assist" in providing "health care" or "related services." *Id.* Moreover, Shady Grove does not claim that it has any contract with Meta, Google or Microsoft (or any other similar entity) to maintain the privacy of the PHI disclosed to these entities. Nor could it, as at least some of these entities use the data for their own purposes, including engaging in profiling and advertising for its own customers for profit, which is inconsistent with the promise that "business associates" will "maintain the privacy" of this information. ¶¶ 52-54. Because Shady Grove's disclosure of Plaintiffs' health data does not fall within this provision, Shady Grove was only permitted to disclose their health data with "written authorization" (Mot. at 5), which Shady Grove did not have.

Lastly, Shady Grove argues that Plaintiffs fail to adequately allege harm. Mot. at 13. This is also wrong, as Plaintiffs plainly allege they were harmed by Shady Grove's disclosure of their private health information. ¶¶ 71, 99; *Doe v. N. Cal. Fertility Med. Ctr.*, 2024 WL 246178, at *4, 5 n.5 (holding allegations that plaintiff was "harmed because she was deprived of the right to keep private information" sufficient to plead injury resulting from intrusion); *see also* Restatement

(Second) of Torts § 652B (1977) ("The intrusion itself makes the defendant subject to liability.");
*Opperman v. Path, Inc*., 84 F. Supp. 3d 962, 993 (N.D. Cal. 2015) (allegations that "harm and damages" suffered "as a result of [d]efendants' intrusion upon their seclusion" sufficient to survive 12(b)(6) motion) (internal quotations omitted).

Plaintiffs are not required to plead separate monetary "damages" or any other harm resulting from this disclosure, as the disclosure of their private information itself is an injury. *See Doe v. N. Cal. Fertility Med. Ctr.*, 2024 WL 246178, at *4, *5 n.5 (holding allegations that plaintiff was "harmed because she was deprived of the right to keep private information" sufficient to plead injury resulting from intrusion); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–18 (9th Cir. 2020) (in a claim of intrusion upon seclusion claim, "[t]he intrusion itself makes the defendant subject to liability"); *Persinger v. Southwest Credit Sys., L.P.*, 20 F.4th 1184, 1192–93 (7th Cir. 2021) (the privacy violation—unauthorized review of plaintiff's credit information— would be sufficient injury under an intrusion upon seclusion claim and was therefore sufficient injury for an analogous statutory claim).

Its reliance on *Beck*, 848 F.3d 262, (Mot. at 13) is misplaced because, as described above (*see* Section III.B.), that action concerned allegations solely of future risk of harm to establish standing, not privacy harms that have already materialized, like here.

###    D.    PLAINTIFFS SUFFICIENTLY PLED UNJUST ENRICHMENT

Under Maryland law, a claim for unjust enrichment is available when "(1) a benefit [is] conferred upon the defendant by the plaintiff, (2) [there is] an appreciation or knowledge by the defendant of the benefit, and (3) [defendant accepts or retains] the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Lacks v. Ultragenyx Pharm., Inc.*, No. CV DLB-23-2171, 2024 WL 2273385, at *4 (D.

Md. May 20, 2024). Plaintiffs allege Shady Grove was unjustly enriched in at least two separate ways.

First, Plaintiffs allege Shady Grove was unjustly enriched because it directly benefitted from the data it improperly disclosed through the tracking technology it incorporated on its website. ¶ 104 ("Plaintiffs and Class members conferred a benefit on SGF in the form of valuable, private communications SGF collected from Plaintiffs and Class members. SGF collected, used, and disclosed this information to third parties, including Google, Meta, and Microsoft for its own gain, including for advertising, analytics, and marketing purposes."). Courts throughout the country have recognized this is an unjust benefit that a defendant cannot retain. *See In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 715 (D. Minn. 2023) (unjust enrichment claim upheld where defendant used tracking technology that collects private health information from defendant's patient portal, including scheduling appointments); *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) (sustaining unjust enrichment claim premised on defendant's use of tracking technology because it "received a benefit in the form of [p]laintiffs' personal health data"); *A.J. v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) (sustaining unjust enrichment claim where "financially valuable medical information" was collected and disclosed through tracking technology installed on defendant's website); *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *7 (benefit conferred was medical information of patients).

Separately, Plaintiffs allege Shady Grove was unjustly enriched because they paid money to Shady Grove for medical services, and otherwise would not have, had they known Shady Grove would share and misuse their private health data. ¶¶ 106, 122. This too is sufficient to plead unjust enrichment. *See Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *15

(W.D.N.Y. Mar. 19, 2024) (sustaining unjust enrichment claim where plaintiff alleged "they have paid Defendant for services that they would not have had they known about [d]efendant's disclosure of their Private information."); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 463 (D. Md. 2020) (sustaining unjust enrichment claim where plaintiffs plead that "had consumers known the truth about [d]efendants' data security practices—that they did not adequately protect and store their data—they would not have stayed at a Marriott Property, purchased products or services at a Marriott Property, and/or would have paid less").

Shady Grove's lone citation to the out-of-circuit data breach case, *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018), does not support a different result. Mot. at 14. There, plaintiffs purchased burritos and their personal information happened to be stolen by hackers from the defendant's point-of-sale system. *Id.* at 1237.[5] The court found there was no unjust enrichment claim because those plaintiffs, who only bargained "for burritos[,]" did in fact "receiv[e] burritos." *Id.* Unlike the attenuated side-order-of-security the *Chipotle* plaintiffs claimed they also bargained for in purchasing food, Plaintiffs here bargained for medical services

---

[5] Separately, numerous courts have rejected *Chipotle*'s questionable reasoning. *See Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1070–71 (C.D. Ill. 2016) ("When the customer uses a credit card for a commercial transaction, he intends to provide the data to the merchant, and not to an unauthorized third party. . . There is an implicit agreement to safeguard the customer's information to effectuate the contract. . . Irwin has alleged the existence of an implied contract obligating Jimmy John's to take reasonable measures to protect Irwin's information and to timely notify her of a security breach.") (internal citation omitted); *Doe v. Tenet Healthcare Corp.*, 2024 WL 1756075, at *5  (sustaining unjust enrichment claim where plaintiff paid for medical services with the reasonable expectation that health information would remain confidential); *Wallace v. Health Quest Sys., Inc.*, No. 20 CV 545 (VB), 2021 WL 1109727, at *11 (S.D.N.Y. Mar. 23, 2021) (plaintiffs plausibly plead they were denied the benefit of the bargain where "[p]art of the price [they] paid to [d]efendant was intended to be used . . . to fund adequate data security, but was not," and thus plaintiffs "did not get what they paid for"); *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 801–802 (W.D. Wis. 2019) (plaintiffs denied benefit of the bargain where they paid for medical services and allege privacy protections were part of the services for which they paid); *Bray v. Gamestop Corp.*, No. 1:17-CV-1365, 2018 WL 11226516, at *4 (D. Del. Mar. 16, 2018) ("[p]laintiffs have plausibly alleged that data security was part of what they paid for but did not receive").

that reasonably (and necessarily) included the protection of their medical information. They correctly expected—consistent with Shady Grove's own representations—that this medical information would not be shared. ¶¶ 47-49, 59-71. That it was makes Shady Grove's retention of these benefits unjust.

### E.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THEIR CLAIM UNDER THE MARYLAND CONSUMER PROTECTION ACT ("CPA")

The CPA prohibits deceptive acts and practices and provides a private right of action for any individual who experiences "injury or loss" as a result of a violation of the CPA. Md. Code, Com. Law § 13-408(a). Shady Grove does not bother to dispute whether it acted deceptively, challenging only the CPA's loss and causation requirements. Both arguments fail.

Under the CPA, the "injury or loss" requirement can be satisfied by economic losses (i.e., monetary losses) as well as noneconomic losses. *See Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 548 (D. Md. 2012) (explaining the CPA included "noneconomic damages" so long as they are "capable of objective determination"); *see also Allen v. CitiMortgage, Inc.*, No. CIV. CCB-10-2740, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011) (finding "damage to . . . credit score, emotional damages, and forgone alternative legal remedies" sufficient to satisfy "actual injury or loss"); *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 468 (D. Md. 2013) (finding "emotional and physical distress" and "late fees, attorney fees, and damage to . . . credit" constitute "an actual injury or loss").

Here, Plaintiffs allege both: (1) noneconomic, objective privacy harms from Shady Grove's disclosure of their private health data; and (2) economic losses because they would not have otherwise paid for Shady Grove's services had they known it would disclose their medical information to others in violation of its promises not to. ¶¶ 63-71, 121-122. Plaintiffs also allege *additional* economic losses because their private health data that was wrongfully disclosed and

used has objective value and they have not been compensated for these benefits. ¶¶ 104-107. Shady Grove's assertion that the CPA's "injury or loss" requirement really requires establishing "actual damages" pursuant to *Citaramanis* and *Golt* is wrong. In *Citaramanis*, the court found that plaintiffs had no damages because, although their landlord had engaged in deceptive conduct by renting an unlicensed apartment, plaintiffs did not claim it was uninhabitable.[6] *Citaramanis v. Hallowell*, 613 A.2d 964, 970 (Md. Ct. App. 1992). Indeed, plaintiffs had actually chosen to *extend* their lease an additional six months at a higher rent after the term expired. *Id.* There are no analogous circumstances here, where Plaintiffs allege they would not have spent money for treatment at Shady Grove or handed over their valuable health data if not for its deception. *See Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 150 (2007) (explaining "injury or loss" requirement is satisfied where plaintiff alleges they "received less than the full benefit of their [bargain]"); *In re Marriott Int'l, Inc.*, 440 F. Supp. 3d at 489 (sustaining CPA omission claim premised on privacy violation where plaintiffs alleged they "would not have paid [defendant] for goods and services or would have paid less for such goods and services" if it had known the truth about [defendant's] alleged omissions).[7]

Shady Grove's unsupported causation argument also lacks merit. Mot. at 15. While it claims that Plaintiffs do not allege how they suffered loss or did not obtain the benefit of their bargain as a result of Shady Grove's deception, this is plainly untrue. ¶ 121 (alleging Plaintiffs would not have used the SG Webpages, avoiding their privacy harms); ¶ 122 (alleging Plaintiffs

---

[6] By contrast, in *Golt*, 308 Md. 1 at 12, the court held allegations that the apartment was uninhabitable was sufficient to meet the injury or loss requirement.

[7] Moreover, since both of these decisions from the 1980's and 1990's, respectively, the Maryland Supreme Court has confirmed that the CPA's injury or loss requirement does not impose "a more demanding standing for pleading" and merely "must be pleaded in the same fashion as would be required in any other cause of action where the plaintiff seeks monetary damages." *Wheeling v. Selene Fin. LP*, 473 Md. 356, 392 (2021)

would not have "used or paid money" for Shady Grove's medical services if they had known of its disclosure of their private health data). These allegations are sufficient to plead causation. *See In re Marriott*, 440 F. Supp. 3d at 489. Shady Grove cites no authority to the contrary.

### F.    PLAINTIFFS SUFFICIENTLY ALLEGED THEIR MWESA CLAIM

MWESA prohibits the "willful[] intercept[ion]" or "willful[] use . . . of any . . . electronic communication[.]" Md. Code Ann., Cts. & Jud. Proc. §10-402(a)(1), (3). Shady Grove only challenges the "content" and "willful" requirements.[8] As described below, these arguments fail.

### i.    Plaintiffs Adequately Allege What Information was Intercepted.

MWESA broadly defines the "contents" of a communication as "any information concerning the identity of the parties to the communication or the existence, substance, purport, or meaning of that communication." Md. Code Ann., Cts. & Jud. Proc. § 10-401(4).

Maryland courts, like courts throughout the country, recognize that detailed URLs disclosing users' searches or requests for treatment with a medical provider constitute "contents" under state and federal[9] wiretapping statutes. *See Medstar Health*, 2020 WL 14005240, at *2 (finding that "the URLs that [p]laintiff visited" and "search queries about . . . treatments" and clicks to "FindADoctor" constitute "contents" for purposes of MWESA); *Castillo*, 2024 WL 4785136, at *5 (finding URLs revealing searches for prescriptions to be contents under the Federal Wiretap Act); *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *6 (N.D.

---

[8] Shady Grove does not challenge, and therefore concedes, the other elements of Plaintiffs' MWESA claim.

[9] The Maryland Supreme Court has acknowledged that MWESA is largely modeled after the Federal Wiretap Act, but that MWESA provides additional protections (e.g., two-party consent). *See Mustafa v. State*, 323 Md. 65, 69 (1991) ("We have pointed out many times that, notwithstanding some important additional protections included in the Maryland wiretap law, our law generally 'is modeled upon the federal act, 18 U.S.C. §§ 2510–2520, and extensively tracks its provisions.'").

Ill. July 9, 2024) (finding "URLs . . [that] include search[es] for . . . medical providers" to be content under the Federal Wiretap Act"); *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-CV-08002-SPG-E, 2024 WL 1626114, at *8 (C.D. Cal. Apr. 2, 2024) (finding "sensitive data" such as "treatments" to be content under California wiretapping statute); *see also Heerde v. Learfield Commc'ns, LLC*, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *6 (C.D. Cal. July 19, 2024) (finding user's searches to be "content" under the federal Wiretap Act, 18 U.S.C. § 2510(8)); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) (finding data revealing "specialty healthcare providers and treatments for medical conditions" to be content); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024) (reason for medical appointment found to be content).

Here, Plaintiffs satisfy the "content" requirement because they allege the intercepted communications contained "identifiable information, including unique user and device identifiers and IP Addresses" (¶ 50) and revealed private health information. ¶ 135. Specifically, Plaintiffs allege the intercepted data revealed that they scheduled an appointment or contacted a fertility provider for treatment, as well as the name of the fertility provider and/or location they were interested in visiting. ¶¶ 19, 27. Shady Grove's assertion that Plaintiffs fail to plead any "non-conclusory facts regarding the nature of the information transmitted" (Mot. at 16) is false, and simply ignores these well-pled allegations. *Williams v. E. Baton Rouge City/Par.*, No. CV 23-01581-BAJ-EWD, 2024 WL 4241627, at *9 n.7 (M.D. La. Sept. 19, 2024) (refusing dismissal where defendant's conclusory arguments "ignore[] the . . . remaining allegations of the [c]omplaint.").

ii.    **Plaintiffs Adequately Allege Defendant's Intent under MWESA.**

Maryland Court of Special Appeals has defined "willful" as "intentional, or knowing, or voluntary, as distinguished from accidental," in the context of civil litigation. *Kim v. Maryland State Bd. of Physicians*, 423 Md. 523, 545 (2011). That a defendant believes their conduct is authorized or lawful does not negate the willful nature of their conduct. *See Bond v. PolyCycle, Inc.*, 127 Md. App. 365, 381, 382 (1999)) (holding that deleting files from computers was a willful act even though defendant "believed that he was entitled to take the technology").

Here, Shady Grove's conduct was willful because it is the owner and operator of the Shady Grove website and had complete control over the technology it incorporated. ¶ 32. No one but Shady Grove could have incorporated the tracking technology—whose only function is to intercept data—on its website. *Id.* Shady Grove was well aware that this decision resulted in the transmittal of private health data because it received analytics from these third parties detailing the type of information being transmitted through this technology. ¶ 33. Worse, the FTC, OCR, and other federal agencies and regulators had repeatedly warned healthcare providers, like Shady Grove, not to incorporate this type of technology on certain healthcare webpages that involve the transmittal of health data precisely because this information will be disclosed to third parties. ¶¶ 35-37; *see also* Leslie Fair, *FTC-HHS joint letter gets to the heart of the risks tracking technologies pose to personal health information*, FTC BUSINESS BLOG (July 20, 2023), https://www.ftc.gov/business-guidance/blog/2023/07/ftc-hhs-joint-letter-gets-heart-risks-tracking-technologies-pose-personal-health-information (discussing recent FTC and OCR guidance on tracking technology, emphasizing that information such as consumers' "visits to healthcare providers" is "uniquely confidential information"); OCR, *July 20, 2023 Letter*, U.S. Dep't of HHS, https://www.ftc.gov/system/files/ftc_gov/pdf/FTC-OCR-Letter-Third-Party-Trackers-07-20-

2023.pdf (last visited Dec. 23, 2024) (notifying companies whose website included tracking technology that disclosure of sensitive health information violated HIPAA, the FTC Act, and FTC's Health Breach Notification Rule). Shady Grove *chose* to do so anyway. ¶¶ 31-33, 38, 41, 49, 50, 51, 54, 56. This conduct can be described as nothing other than intentional or willful. *See Cooper v. Mount Sinai Health Sys., Inc.*, No. 23 CIV. 9485 (PAE), 2024 WL 3586357 (S.D.N.Y. July 30, 2024) (finding intent adequately plead where defendant installed tracking technology and routinely sent PII to third parties); *R.C. v. Walgreen Co*., No. EDCV 23-1933 JGB (SPX), 2024 WL 2263395, at *15 (C.D. Cal. May 9, 2024) (finding intent element satisfied where plaintiff alleged the website provider "intentionally configured the Pixels" to capture the communications); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021) (quoting *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) ("At the pleading stage, however, interception may be considered intentional 'where a defendant is aware of the defect causing the interception but takes no remedial action.'")).

Defendant's reliance on *Benford v. Am. Broad. Co.* (Mot. at 16)—a case decided three decades ago, before these types of tracking technologies were even developed—does not support their position that willfulness is not adequately alleged. 649 F. Supp. 9, 10 (D. Md. 1986). First, *Benford's* articulation of the willfulness requirement—stating it must be done with "bad purpose" (*id.*)—is inconsistent with subsequent Maryland Supreme Court decisions, and thus not good law. *See Deibler v. State*, 365 Md. 185, 199, 776 (2001) (explaining willful requirement only requires "purposeful conduct" but not "a bad motive nor knowing unlawfulness" and rejecting *Benford*). Second, *Benford* undermines Shady Grove's position as it confirmed that issues of "intent[]" typically cannot be resolved on the pleadings, and declined to resolve the question even at *summary judgment. Id.* (holding intent is "in dispute" thus "precluding summary judgment"). Properly read,

*Benford* supports denying Shady Grove's motion on these grounds.

Shady Grove's separate argument that its Notice of Privacy Practices ("Notice") negates its intent makes little sense. Mot. at 16. Shady Grove does not identify a single portion of this Notice that speaks to its intent. *Id.* (merely providing a URL to the Notice). But in any event, numerous courts have recognized that whether a party *acts* with intent is a fact issue that cannot be determined solely from the face of a policy document. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1065 (9th Cir. 2015) (confirming questions of "intent" are "factual" and "often not appropriate for resolution via motion to dismiss"); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (intent argument turns "on disputed questions of fact that need development on a full evidentiary record"); *In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557-PCP, 2024 WL 1251350, at *4 (N.D. Cal. Mar. 25, 2024) (same); *Smith v. Google, LLC*, No. 23-CV-03527-PCP, 2024 WL 2808270, at *5 (N.D. Cal. June 3, 2024) (same); *Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024) (holding on summary judgment that whether Google "adhered to its own . . . policies" is a "question[] of fact a jury will need to decide."); *Benford*, 649 F. Supp. at 10 (noting defendants' intent was a disputed issue of fact); *Gladstone v. Amazon Web Servs., Inc.*, No. 2:23-CV-00491-TL, 2024 WL 3276490, at *11 (W.D. Wash. July 2, 2024) (question of intent to be determined on will be "tested on an evidentiary record."); *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 858 (N.D. Cal. 2022) (question of intent "better determined on a full evidentiary record"); *Guthartz v. Park Ctr. W. Corp.*, No. 07-80334-CIV, 2009 WL 278960, at *4 (S.D. Fla. Feb. 5, 2009) (intent is a question of fact). What Shady Grove *did* (including whether it acted in conformity with its own policies) is a question for the jury later in this case.

## IV.    CONCLUSION

For the reasons set out above, Plaintiffs respectfully request that Defendant's Motion to Dismiss be denied in its entirety. Should the Court be inclined to grant all or part of the Motion, Plaintiffs request that the Court grant them leave to amend the Complaint under Fed. R. Civ. P. 15(a)(2) on the basis that the granting of such leave would be in the interests of justice and would cause no prejudice to Defendant.

Dated: December 23, 2024

/s/ *Christian Levis*

**LOWEY DANNENBERG, P.C.**
Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Joseph Pettigrew
(MD Bar No. 1812120130)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
jpettigrew@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo (admitted *pro hac vice*)
Anjori Mitra (admitted *pro hac vice*)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
jguglielmo@scott-scott.com
amitra@scott-scott.com